Good morning and welcome everyone. This is the first day of our oral arguments for the May term, Wednesday, May 15, 2013. Agenda number one is our first case on the docket, case number 114639, People v. Omar Johnson. Counsel for the appellant, please proceed. May it please the Court. Good morning, Your Honors. Good morning, Counsel. My name is Yasmin Navai and I represent the petitioner appellant, Omar Johnson, on behalf of the State Appellate Defender. The question before the Court today is quite discreet and narrow. Very simply, whether a provision of Section 4-2002.1A of the Illinois County's Code, which I'll refer to for simplicity's sake as a fee statute, whether a provision of this statute provides for the recoupment of a $50 state's attorney's fee for the state's involvement in Mr. Johnson's Section 214-01 proceedings. The relevant provision of the fee statute provides for this assessment, I quote, for each day actually employed in the hearing of a case of habeas corpus in which the people are interested. The State acknowledges that petitioner did not file a habeas petition under Article 10 of the Illinois Code of Civil Procedure. Thus, in answering the preceding question, this Court must determine whether the legislature utilized the term habeas corpus in a manner consistent with that term's well understood legal definition, or whether, as the State posits and the Appellate Court held, it is to be broadly interpreted as encompassing all collateral remedies. This Court's well recognized principles of statutory construction guide the analysis here. Petitioner posits that the cardinal rule of statutory construction, the plain language, answers this question in the negative. As this Court has recognized time and time again, the most reliable indicator of a legislature's intent is the actual language of the statute, given its plain and ordinary meaning. Applying this important legal precept here, it becomes apparent that habeas corpus was not to be broadly interpreted and the term and the fine here was improper. Three factors support the petitioner's analysis of this clear and unambiguous statute. First, the term habeas corpus does not, nor has it ever encompassed Section 214.01 petitions or their predecessors at common law, the writ of error quorum nobis. In this regard, the authorities are consistent that when the term habeas corpus is used in isolation, as it was in the instant fee statute, it applies very specifically to a particular form of the writ, the great writ now codified in the Habeas Act. And because this writ provides the extraordinary remedy of immediate release, it applies only in two very limited circumstances. One, where the presiding court lacks either personal or subject matter jurisdiction over the individual, or two, where some subsequent occurrence following conviction entitles the petitioner to immediate release. In stark contrast are the proceedings at Section 214.01 and at common law, the writ of error quorum nobis, which do not provide the extraordinary remedy of immediate release and are directed primarily at correcting errors of fact, which if known at the time of trial would have prevented entry of the judgment. In under today's standard, therefore, we have three very distinct collateral remedies. The, on one hand, the very extreme and significant remedy available to habeas petitioners, and on the other, the proceedings that we most often see, for example, at the State Appellate Defenders, the Section 214.01 petitions and the post-conviction petitions. And this brings me to my next point. Given the current state of the law, it is important to note that the instant fee statute has been amended multiple times since its enactment in 1992. All of these amendments have occurred following the advent of the Post-Conviction Hearing Act and the refinement of Section 214.01 law. Therefore, it stands to reason that if the legislature had, in fact, intended to employ a state's attorney's fee in either the 214.01 or post-conviction context, it would have amended the fee statute to reflect the current state of the law. That it did not must be construed as significant. Contrary to the state's argument, this Court has never held that it is the role of the judiciary to correct a perceived legislative shortcoming under the guise of judicial fiat. The state's argument to the contrary, petitioner would posit, is simply a red herring. Indeed, the cases of Lieberman and In re Donald A.G. are readily distinguishable from the incident case. In both of those cases, this Court utilized an infrequently used canon of statutory construction where the clear and unambiguous legislative intent was being thwarted by a typographical error or a drafting error that resulted when Illinois revamped the state of sex offenses within the state. The state points to no such alleged error in this case. In fact, the state has cited no legislative history in support of its expansive interpretation of the incident fee statute. This in and of itself serves to distinguish the incident case from those that the state relies upon. But that brings me finally to my third point, and that is that all factors suggest the converse. That the legislature did not intend for this fee to apply in every litigation scenario, every conceivable litigation scenario. There are two points in this regard. First, it's notable that Public Act 87-669 is responsible not only for the enactment of the incident fee statute, but also of the filing fee statute located at Section 27.2A of the Illinois Code of Civil Procedure. I'm sorry, from the Clerk of Courts Act. I apologize. This is important, however, because unlike the incident fee statute, which only references habeas petitions, the filing fee statute specifies with particularity petitions to vacate or modify, i.e., Section 214.01 petitions, and a separate, in fact, higher filing fee for habeas petitions. But this Court has, of course, recognized the canon of statutory construction that two statutes passed in the same public act must be construed in a manner consistent with one another. If that canon of statutory construction is to have any meaning, then the exclusion of the public act, the petition to vacate language from the incident fee statute must be construed as deliberate. This is also important because it shows that, indeed, when the legislature wants to apply court costs in the context of petitions to vacate, it knows how to do so explicitly. It does not need to go about employing circuitous methods such as those suggested by the State here. This brings me to my next point. In fact, this Court has undercut this State's expansive interpretation of the legislative intent in two cases. People v. Miles Smith and in In re. W. W. In both of those cases, this Court construed both the incident fee statute and a predecessor statute, and noted certain circumstances when the State is not compensated for substantive litigation. In Miles Smith, it was their role in bail hearings and in probable cause hearings and when the defendant is denied bail. And in In re. W. W., it was juvenile appeals. All of these, of course, undercut the State's expansive interpretation of the statute. In conclusion, if there are no further questions. Justice Breyman. You do not make any argument regarding the impact on access to justice in these additional fees? If I understand your question correctly, you're saying impact upon the defendant? Yes. Well, we did, and related to that argument, we said that since this fee statute applies outside of the context of frivolity, actually, that it could impact findings of frivolity. It could impact petitioners absent a finding of frivolity if there is such an expansive interpretation. So those filing 214.01 petitions. Are there any statistics on the amount of collection that is actually done by the State's attorney's office for judgments that are secured? None that I'm aware of, but I don't believe they do collect them on a routine basis. I'm not aware of them. I don't have any statistics. Any impact on the fact that a judgment, even for $50, that goes on to someone's credit record, would affect their life forever? I don't know, but it certainly would impact our clients. I mean, we are dealing with indigent clients who have limited resources. That's why, in fact, I'm appointed to represent them. There's public defenders that represent them. So even a $50 State's attorney's fee certainly would affect them. I don't have any statistics, though, in that regard. Thank you. Ms. Navi, before Justice Freeman, one of the points you concluded on was the Miles Smith case. And that dealt with preliminary examinations, and the Court's interpretation was that it was focused on probable cause hearings. Is that right? Correct. But the people argue in that case, in this case, about the Miles Smith case, that there was no definition. There was a definition in that statute on preliminary examination, but there's none here on habeas corpus. What's your take on that? I would respond that we actually do have a definition of that term. If we look to the Illinois Code of Civil Procedure and the Habeas Act under Article 10, it's very defined when habeas petitions are available. And indeed, in this Court, in Miles Smith, looked also to the definition in Black's Law, to other courts and other states how it's been interpreted. I think similarly, we can make, if we look at Black's Law, if we look at U.S. Supreme Court precedent beginning in 1807, if we look at even our own case law in Illinois, we've consistently designated or defined habeas petitions in a very narrow sense as applying, because it is such an extraordinary remedy, it applies only in two very limited senses. I'd simply like to close by saying that where, and this goes to my response to Justice Kilbride, that where the term habeas corpus has been so consistently construed in a manner consistent with the Habeas Act, there simply is no support for the appellate court's expansive interpretation of the statute. While the appellate court was correct in interpreting the frivolous fine statute, an entirely separate statute, Section 22-105 of the Illinois Code of Civil Procedure, based upon purposefully broad language therein in a broad manner, the same cannot be said of the instant fee statute. Indeed, the appellate court, by reading expansively a specific term of legal art, habeas corpus, in such a manner that it lacks all meaning whatsoever, has rendered this term virtually meaningless. And it is for this reason that the appellant respectfully asks that this court vacate the appellate court decision, and indeed, vacate the assessment of the $50 fine. Thank you. Thank you. Counsel for the appellee. Good morning, Your Honors. Counsel, Assistant State's Attorney, Christine Cook, on behalf of the people. Many years ago, the petitioner approached 58-year-old Dorothy Juula, his employer at a Kentucky Fried Chicken restaurant in suburban Chicago. He pointed a gun at her, forced her into her car, drove her to an undisclosed location, where he shot her several times in the head while she was still in the trunk of the car. The petitioner and a friend then drove Ms. Juula to DeKalb, Illinois, where they abandoned her vehicle and her corpse inside that trunk. She was discovered several days later. The petitioner was found guilty of murder, armed robbery, aggravated kidnapping, aggravated vehicular hijacking, and concealment of a homicidal death. He was given life for the murder, 60 years for the armed robbery, the aggravated kidnapping, the aggravated vehicular hijacking, and 10 years for the concealment. On direct appeal, the life imprisonment for the murder conviction was vacated pursuant to apprendi. Under this court's supervisory order, the appellate court reinstated the life conviction. The petitioner then filed a post-conviction petition, which was summarily dismissed. On appeal, a Finley motion was filed, and that case was disposed of on appeal. The petitioner filed a motion to vacate a void order, and that was dismissed for want of prosecution on appeal. Now before you today is the 214-01 petition. None of the substantive issues are before this court. The only issue is the $50 state's attorney's fees. This court needs to be aware that in this case, an assistant state's attorney filed not one, but two independent motions to dismiss. She writted the defendant in and provided counsel to the defendant, which allowed him to actually withdraw his first 214-01 petition so that he could raise new claims before the court below. The issue before this court is indeed a narrow one, but your applications should be broad, as the appellate court's was, in defining post-conviction, or in defining the habeas corpus as something that pertains to all collateral claims. Ms. Cook, as I understand it, at least your argument in part, you're saying a sensible reading of the act would be that habeas corpus should be used in its most generic sense, right? Absolutely. So my question for you was, what, if any, impact does the fact that in 1907, when the relevant language of the Fee Act was enacted, a defendant could seek collateral relief through writs of error and writs of error quorum novus as well as habeas corpus? Wonderful question, and a request from this court. I had filed a motion to cite additional authority this past Monday, and I need to correct an error I wrote a precedence to, I needed to write subsequent to. In 1907, writs of error quorum novus were not recognized in criminal cases. That didn't happen for another 20 years in People v. Crooks, which was the subject of my motion for additional authority. Writs of error quorum novus were not applicable to criminal cases in 1907. Which meant that in 1907, when the fee statute was written, a petitioner had only one option to obtain any type of what would be today's collateral relief, and that was through habeas corpus. The fee statute as it is written is most generic. It does not say a petitioner who files a postconviction petition. It does not refer to the postconviction or to the habeas corpus act at all. It doesn't refer to anything. It just has this generic term of habeas corpus. This Court must look to the entire scheme of the fees and salaries statute to ascertain and give effect to the legislative intent. That is what precisely is missing in petitioner's argument. But don't we look to the language of the statute first? Yes. And determine if it's plain? Yes. And here, the term habeas corpus is clearly ambiguous, because there is no definition of habeas corpus in the Act. And the definition of habeas corpus by any definition, especially in Black's Law Dictionary, is that of a generic term. In common law, it has been repeatedly held that the term habeas corpus is a generic term. In the People's Brief, we have a string side of cases that refer to that very proposition, that habeas corpus is to be interpreted as a generic term. Further, habeas corpus is a collateral attack. And there are many types of habeas corpus petitions, which are also listed in our brief. Now, is there any significance to the fact that when the current version of the fee statute was enacted, excuse me, they also, legislature also enacted the Clerk of Courts Act, right? Correct. And in that Act, there were separate filing fees for 214-01 petition and habeas corpus petition. Correct. Does that have any impact on your argument? No. And the reason? Because when the Fees and Salaries Act was enacted, of course, this was pre-1401, pre-post-conviction hearing act, and should be left undisturbed because habeas corpus, as is written, is a generic term that can and should be applied to all collateral proceedings. But when the amendment was enacted, doesn't the fact that there were separate filing fees show some intent on the legislature that they were separate? The filing fees, Justice, are certainly distinct, that they are a more modern interpretation, of course, and the filing fees have no impact on whether or not a fee will be imposed later on when a 214-01 petition is found to be non-meritorious, which is the only time the fee would be imposed. Counsel would have this court believe that this is some kind of a financial hindrance for anybody who wants to file a 214-01 petition, and that is simply untrue. There is a separate filing fee, which would, of course, impact anybody who wants to file a 1401 petition, but this fee only applies to those individuals who file a non-meritorious petition. And this court should also note, in the 110 years that this filing fee has been on the books, this is now the second case in which it's ever been litigated, making petitioners claim that this would cause some undue hardship across the board, completely unmerit, or meritless. This is a... Following up on Justice Freeman's, I think it was Justice Freeman, who brought up, how many cases have been found frivolous under this situation? I don't have the statistics for all of those types of arguments. I know from just some personal experience, across the board, fees are routinely not collected, because most of these petitioners are indigent. I can't give you a number, I don't have access to that type of information, but there's certainly, I would say, the gross majority go uncollected. And I was wondering how many of the gross majority are actually finding it frivolous? That I do not know either, only because no appellate court, other than Gutierrez, and today before this court, has this fee ever been subject to litigation. So that pauses one to think that this probably is not being filed, that the filing fees are not being requested, and certainly aren't really at issue. The facts regarding this defendant are just horrendous in this case. But there are all those other defendants out there who try to, who have the possibility of getting their lives back together. They must live with these kinds of judgments that could really have an impact on their life. And that is the concern that I, that I have. And you have no statistics to show how much of this, how many of these judgments are ever collected? I do not. I do not. Does, has the state's attorney's office ever considered the expense the office is put to in pursuing, keeping records, and maintaining? I think you must renew the judgment every eight years or nine years. Is that done for it to still be alive? Justice, I can't answer that question. Those were not the parameters of the issue before me. The collection of fees is, in this case, is not at issue. This petitioner has been given a life sentence for what the trial court called a shockingly evil case. This defendant isn't getting out. This defendant is not going to get hit on his credit report for a $50 fee. And in that same line of questioning, Justice Freeman, there are filing fees, of course, which are at issue, which get imposed upon everybody who files a 214-01 petition or a post-conviction petition. These are fees that are only imposed, and again, this is only the second case in over 100 years that this fee has been litigated in, where the fee is imposed when the case is found to be non-meritorious. There are a lot of hoops that have to be jumped through before this fee can be met. The people have to engage in substantive in-court litigation, as they did in this case. And maybe defendants, unlike the State's Attorney's Office, is not willing to throw good money after bad money. But you said the statute should narrowly apply only to habeas corpus proceedings. And to do so, I'm sorry, would lead to an absurd result. Absolutely. Can you explain that? Certainly. Because the whole point of the fee statute, there is no question that when the legislature originally wrote this statute in 1872, they outlined every chronology of litigation. The habeas corpus fee statute in question was enacted in the statute in 1907. So since 1907, if you look at the entire fee statute, it's pretty comprehensive. It covers every imaginable piece of litigation, from peace, from preliminary hearings, breaches of the peace, paternity, venue, trial, appeal. And it also distinguishes the different types of fees that are allowed for different felonies. Murder cases being given a higher fee than some other less aggravating felony. Then there are forfeiture fees, mental illness, dependency. And then, oddly, but perhaps not oddly, or, you know, there is the habeas corpus fee, which is put chronologically in the fee statute at the end of all of in-court trial litigation. Which, even though there wasn't two 1401 petitions in 1907, and even if there weren't habeas corpus, or, sorry, post-conviction petitions in 1907, that the legislature was clearly viewing habeas corpus as some type of what we would consider today to be a collateral attack. Its physical placement in the fee statute is most telling. And the language used in that fee statute is generic. Because it doesn't refer to the habeas corpus act. Because it doesn't say petitions filed in the matter of habeas corpus. It merely says, in a hearing of a case of habeas corpus. Ms. Cook, you're going back to 1907, but historically, habeas corpus, wasn't it used primarily prior to conviction? Yes. And it's only now, under the statute, it's used, as your opposing counsel said, for personal jurisdiction, or some event after conviction and sentencing. So it seems like it's so narrowly drawn that there would be so few opportunities under habeas to include that. And that's probably why it wasn't mentioned in the statute. No, it wasn't mentioned in the statute because two 1401 petitions and habeas, or post-conviction petitions, didn't exist in 1907. Right, I'm talking about now. Right. Well, now that is recognized, of course, the two 1401 being factual matters and the post-conviction being constitutional matters. So clearly, that is addressed in today's present-day collateral claims. However, in 1907, the only form of relief anybody could ever receive, and in the great writ, which is a habeas corpus ad subjiciendum, or subjiciendum, is the great writ today. That, of course, has changed over the past 100 years with the enactment of two 1401, with the enactment of the Post-Conviction Hearing Act, that habeas in the present modern day has become much more narrowly construed. In 1907, under the second prong, which counsel has referred to today, that would allow somebody in 1907 to get collateral relief, whether it was pretrial or post-trial, if that answers your question. Going back to something Justice Garmon said, first of all, it's entirely reasonable to believe, I believe, that the legislature intended for state's attorneys to collect these fees. You've brought up like two or three times now that this is the second time this has been litigated. Don't you agree that with the words habeas corpus being used, that this court would have to stretch the plain meaning of the statute? I mean, would a better result saying a call to the legislature to change the language of the statute, if indeed they did intend that state's attorneys collect these fees? Well, certainly it would be more convenient if they had amended the statute to reflect 21401 in a post-conviction once those acts were done. Isn't plain reading the first rule of statutory construction? Yes, but in that vein, Justice, the term, the way the statute is written is in the case of habeas corpus. It doesn't refer to the Habeas Corpus Act. It doesn't say habeas corpus petitions because habeas corpus encompasses a variety of writs that could encompass a lot of requests remaining. Habeas corpus in its common law meaning means illegal detention. Illegal detention has evolved in modern day times to encompass 1401, factual matters, and post-conviction hearing acts, constitutional matters. Those are all stemming not only from quorum nobis on the 21401, but from habeas too. Because even today, one can still request crossover relief for habeas and 21401 for void judgments. That still exists today, which supports the appellate court's broad interpretation of habeas corpus as a generic collateral attack of judgment that should be applied to this fee statute. May I ask you a question? You, a few minutes ago, were discussing generally the language of the statute in the hearing of a case of habeas corpus, and you started to talk about that this was a frivolous petition that had been filed. Now, clearly, the ability of the court to require payment of fees and court costs for a frivolous filing is in separate sections. Yes. I mean, you're not combining. No, no, no, no. In fact, in that separate section, the frivolous filing, the legislature was able to set  post-conviction petitions and section 21401 petitions. So in this specific section dealing with costs and fees based on a frivolous filing, the legislature is able to break out these different kinds of filing. Absolutely. Shouldn't we take that into consideration when we go back and we look at the fact that in the specific section that we're looking at now, the legislature only directs us to the habeas corpus? Well, the problem with that and else, Justice Tice, is this. Frivolous fees can be applied and sometimes often are at a summary dismissal when the state's attorney has absolutely no interaction, hasn't filed a motion to dismiss, and has literally no action in that case. This fee applies to state's attorneys being compensated for their substantive in-court trial work. I'm not really talking about the policy behind the two statutes. I'm just talking about the plain language. The section that we're looking at, it says habeas corpus. In a related but very different section, the legislature breaks down post-conviction habeas corpus 21401. If they do it in that section, why wouldn't we assume that when they didn't use those various terms, they had only used habeas corpus, they meant habeas corpus? Because habeas corpus is, in its own definition, a generic term. Then why did they need to put all these other terms into the frivolous filing? Because the frivolous filings were enacted post-21401 and post-conviction hearing act enactments. This is still a 1907 statute, which other than the monetary number, I think it originally started out as a $20 compensation and it's at $50 now. Other than the monetary provision being raised, this statute has been literally unchanged since 1907. And one has to go back to 1907 and determine whether today's 21401 would have been recognized under that provision, under a habeas corpus petition and absolutely would have because there was no other alternative in 1907 in which to file any collateral claim of relief, whether it be factual or constitutional. I'd also like to address counsel's argument that we are discussing a legislative shortcoming and we are requesting that you fix that. It is not the people's position that this is a legislative shortcoming. It could not have been a legislative shortcoming because 21401s and post-conviction hearing didn't exist in 1907. There's no legislative shortcoming in the fee statute at all. The fee applied in this case is only applied for non-meritorious petitions. If a petitioner has filed a meritorious 21401 petition, he will not be assessed this fee. The people have to ask for the fee. They have to be substantively involved in the fee and the court has to make a finding that this is a non-meritorious petition which is wholly independent of a frivolous petition. The case law, the common law and common sense as well as statutory construction mandate that this court apply a broad interpretation just as the appellate court did and find that habeas corpus in this statute should be interpreted broadly. Counsel is right. The issue before the court is narrow, but its application should be broad. And for all of the reasons said here today and those set forth in our brief, the people respectfully request that this court affirm the appellate court's decision in imposing the $50 state's attorney fee in this case. Any rebuttal? May it please the court. Your honors, right off the bat, there's some misapprehensions on behalf of the state. Let me just state first and foremost that the term habeas corpus is not ambiguous. The state refers to a number of string sites that it has in its brief. One of those is extramarital sexual intercourse. When we say the writ of habeas corpus without addition, we most generally mean the great writ. The great writ, which is now codified in the Habeas Act. They are referring particularly to a specific form of the great writ. But if that's not enough, let's go to Stone v. Powell, 1976. Quote, it is now well established that the phrase habeas corpus used alone refers to the common law writ of habeas corpus as subjunct, I'm going to perturb the Latin, known as the great writ. Again, we are dealing with one particular form of the great writ. There is no ambiguity in this statute. There is no reason to go beyond the plain meaning of the statute. Justice Thomas, you were right in that regard. There's no grounds for going beyond the plain meaning. But getting to the second point, I think the absurdity here, actually, would be to go beyond the, given this plain understanding of this term, to go beyond this and to read into effectively this statute, the terms post-conviction proceedings, section 214.01 proceedings, when Justice Tice, as you point out, that when the legislature enacted the instant fee statute, we have three very separate types of collateral remedies. Now, I'd also like to go back to the first point that the state made based on their motion to cite additional authority. I have read that case, People v. Crooks. To my mind, it does not refute the state, my argument in any way, shape, or form. In that court, the court was just reaffirming what was known at common law, which was that writs of error quorum nobis could be used in the criminal context. Indeed, in that case, the court was just dealing with whether the trial court, the circuit court, had jurisdiction to consider the motion to withdraw guilty plea, which the defendant presented, and it was the defendant's position that they could as a writ of error quorum nobis. So that doesn't support the state's position. The state also suggests that there's only been two cases in which this fee statute has been litigated. That is clearly erroneous. I recount People v. Williams, In re W.W., Miles Smith, in the instant case, and the state points out People v. Gutierrez. So that's incorrect. As far as this statute covering every conceivable litigation, again, as I pointed out in my opening brief, that is simply not the case. Miles Smith, this court recognized two instances where the fee statute did not compensate the state for substantive, their substantive role in litigation. And in In re W.W., again, the state has no response to that as well. Again, I would, the state also makes the point that there's some kind of overlap between habeas petitions and 214.01 petitions. In point of fact, the cases at the state site suggest that, no, this is not the case, that they are distinct animals, and that a void order generally cannot be attacked in a habeas petition. It must relate back to the lack of personal or subject matter jurisdiction. So I think I've covered my points. I would just simply, if there are no further questions, I would like to ask that this court vacate the appellate court's decision and the imposition of the fine. Thank you. Thee. Thank you. Case number 114639, People v. Omar Johnson, is taken under advisement as agenda number one, and Counsel Cook, we thank you for your arguments today.